AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

## UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT
**07/24/2025**
CENTRAL DISTRICT OF CALIFORNIA
BY:        DVE        DEPUTY

for the

Central District of California



**FILED**

July 24, 2025

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY  *Nancy Boehme*
Deputy Clerk, U.S. District Court

United States of America

v.

Sohail Hussain,
           Defendant.

Case No.  8:25-mj-00604-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about July 16, 2025, in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute a controlled substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/*
_____
*Complainant's signature*

Tanya J. Tran, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        July 24, 2025

_____
*Judge's signature*

City and state:   Santa Ana, California

Hon. Douglas F. McCormick, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA B. Lichtman
x3530

<u>**AFFIDAVIT**</u>

I, Tanya J. Tran, being duly sworn, declare and state as follows:

## I. <u>INTRODUCTION</u>

1. I am currently employed by the United States Department of Homeland Security ("DHS"), Immigration & Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), as a Special Agent ("SA"). I have been so employed since October 2024, and I am presently assigned to the Los Angeles International Airport Group in Los Angeles, California.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. I received 25 weeks of law enforcement training at the Federal Law Enforcement Training Center in Glynco, Georgia. The training curriculum covered topics including drug and firearm investigations, federal firearms and controlled substances laws, identification of controlled substances, physical and electronic surveillance, undercover operations, financial investigation, money laundering techniques, and the general operation of drug trafficking organizations.

4. During my employment as an HSI SA, I have participated in several controlled substance investigations in a supporting role. Moreover, I have assisted in the execution of federal and

1

state search and arrest warrants related to controlled substance and firearm violations.  I personally participated in the investigation discussed in this affidavit as the co-case agent, and I am familiar with the facts and circumstances of the investigation.

## II. PURPOSE OF AFFIDAVIT

5.    This affidavit is made in support of a criminal complaint against, and arrest warrant for, Sohail HUSSAIN ("HUSSAIN") charging him with a violation of 21 U.S.C § 841(a)(1) (possession with intent to distribute a controlled substance).

6.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

7.    On July 16, 2025, Irvine Police Department served a search warrant at a residential condominium located at 186 Terrapin, Irvine, California 92626, which officers believed to be HUSSAIN's residence.  During the execution of the search warrant, HUSSAIN was encountered in his vehicle in the garage of the residence.  During a search of a bedroom closet in the

2

residence, Irvine Police Department ("IPD") officers recovered approximately 3.43 pounds of a substance that field tested positive for cocaine, multiple firearms, and various ammunition. Directly next to the bedroom closet where the suspected cocaine was found, officers found a pile of bank statements with HUSSAIN's name on them.

#### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

8.    Based on my personal involvement in this investigation as well as my discussion with other law enforcement personnel involved in the case, I have learned the following facts:

#### A.    Investigation of Drugs in FedEx Parcels

9.    On February 24, 2025, HSI SA Dylan Greer received information from the United States Customs and Border Protection ("CBP") Anti-Terrorism Contraband Enforcement Team in Honolulu, Hawaii regarding the seizure of approximately 1.05 kilograms of suspected methamphetamine on February 19, 2025.  The suspected methamphetamine was discovered inside the contents of a Federal Express ("FedEx") package destined for New Zealand.  CBP also provided HSI with information on an additional associated parcel that was found to contain suspected methamphetamine.

10.  On March 3, 2025, SA Greer contacted FedEx to request the original shipment locations and available video footage associated to the parcels destined for New Zealand.

11.  FedEx provided the following information: The parcel bearing tracking number 7721 0412 3846 was originally dropped off and shipped from a FedEx store located at 7000 Barranca

3

Parkway, Irvine, CA, 92618, on or about February 18, 2025, at approximately 1437 hours.

12. FedEx provided SA Greer with video footage associated with the parcel shipped from the FedEx store in Irvine, in which Agents observed a white female, later identified as Katrina Hornsby. Hornsby was positively identified as the individual who shipped the parcels that were later discovered to contain methamphetamine.

13. On March 13, 2025, IPD detectives applied for a state search warrant to place a GPS tracker on Hornsby's vehicle. That search warrant was issued on March 13, 2025.

14. On March 19, 2025, Hornsby was observed by IPD detectives sitting in the passenger seat of a 2021 white BMW X5 bearing California license plate 9LJC637 (the "white BMW"). In the driver's seat of the vehicle was a female, later identified as Sofia Achackzad. A records check indicated the white BWM was registered to HUSSAIN.

**B.    Officers Conduct Surveillance of HUSSAIN**

15. On April 23, 2025, IPD detectives conducted surveillance of the white BWM and located the vehicle at Joey restaurant in Newport Beach. Inside the restaurant, detectives observed Achackzad eating lunch with HUSSAIN. Detectives continued to surveil Achackzad and HUSSAIN as they drove away from the restaurant in the white BMW and arrived at 186 Terrapin in Irvine (the "Condominium").

16. On April 23, 2025 and July 13, 2025, officers observed the white BMW registered to HUSSAIN parked in the garage at the

4

Condominium, and they also observed HUSSAIN coming and going from that location on multiple days. Based on this, officers believe that the Condominium is HUSSAIN's residence.

17. On April 24, 2025, while conducting surveillance at the Condominium, IPD detectives observed HUSSAIN driving the white BMW out of the residence's garage. Detectives followed HUSSAIN, who eventually pulled into the neighborhood of 64 Latitude in Irvine.

18. When HUSSAIN pulled into that neighborhood, his driving pattern suddenly changed and became very erratic, including taking multiple last-second sharp turns, random U-turns, and circling the neighborhood. Based on their training and experience, IPD detectives recognized this behavior as consistent with counter-surveillance used by narcotics dealers to evade potential law enforcement officers that may be following them.

19. After approximately five minutes of driving in this manner, HUSSAIN parked along the curb in the area of 64 Latitude. Detectives then observed a black Tesla pull up directly behind HUSSAIN's vehicle.

20. Detectives observed a female (later identified as Eveyln Baltazar) exit the driver's side of the Tesla and open its trunk. At that time, HUSSAIN exited his vehicle, opened its trunk, and handed two white trash bags out of the trunk of his vehicle to Baltazar, who immediately placed them in her trunk and closed it. HUSSAIN and Baltazar then entered their vehicles

and left the area.  Detectives recognized this interaction to be consistent with a drug deal.

21.  Detectives began to follow Baltazar as she left the area.  Once Baltazar pulled out of the neighborhood, she began driving very erratically, including multiple last-second sharp turns, random U-turns, and circling the neighborhood.  Detectives again formed the opinion that this driving style was consistent with counter-surveillance used in narcotics transactions.

**C.    Execution of a Search Warrant at HUSSAIN's Residence**

22.  On July 14, 2025, IPD officers obtained a state search warrant to search the Condominium located at 186 Terrapin, Irvine, California 92618.  The Condominium is a two-story, three-bedroom residence.

23.  On July 16, 2025, agents executed the search warrant at the Condominium at approximately 12:00 p.m.  IPD detectives observed HUSSAIN driving his vehicle towards the garage of the Condominium.  HUSSAIN then opened the garage and backed his vehicle into it.

24.  IPD detectives activated the lights and sirens on their unmarked police vehicles and conducted a traffic stop of HUSSAIN while he was inside his vehicle in the garage.  Once the traffic stop was initiated, multiple commands were given to HUSSAIN by detectives to exit the vehicle, however, he did not comply and refused officers' request to unlock the vehicle.

25.  As detectives attempted to gain compliance from HUSSAIN, they could see that he was continuously looking down in

6

his lap and was attempting to reach down towards his waist and lap area.  Based on their training and experience, the detectives formed the opinion that those types of movements were consistent with movements made by individuals armed with a firearm, and they therefore decided to break the rear driver's side window of the vehicle to gain access to the car and remove HUSSAIN.  HUSSAIN was taken out of the vehicle, placed in handcuffs, and detained during a search of the Condominium.

26.  Based on my conversation with HSI SA Fernando Alejandre, who was present at the execution of the search warrant at the Condominium, I know that HUSSAIN made statements to law enforcement that day confirming that he and Sofia Achackzad reside at 186 Terrapin, Irvine.

27.  During the search of the Condominium at 186 Terrapin, Irvine, officers recovered items including the following:

a.  Approximately 46.38 pounds of marijuana and cannabis products, located in various places throughout the house.

b.  A large black trash bag in the garage with approximately 50 large packages of plastic-wrap and tape that were cut open.  These packages had a large amount of a white powdery residue inside them.  The residue was field-tested utilizing TruNarc and tested positive for cocaine.  Detectives also recognized the packaging material to be consistent with packaging used to transport kilograms of cocaine.

c.  Approximately 3.43 pounds of a white powdery substance that was vacuum-sealed into two different bags,

7

located in the closet of the first bedroom.  The substance field-tested positive for cocaine in a TruNarc test.

      d.   Directly next to the suspected cocaine was a black Puma duffle bag containing the following firearms and ammunition:

         i.   a loaded un-serialized AR-15 pistol;

         ii.   a loaded Glock 27 handgun;

         iii.   a loaded Canik TP9DA handgun;

         iv.   a loaded Smith and Wesson revolver;

         v.   a loaded Springfield XD-9 handgun;

         vi.   two 30-round Glock magazines;

         vii.   three 9mm 10-round magazines;

         viii.   Two .40 caliber high-capacity magazines;

         ix.   a Glock 50 round drum magazine;

         x.   a 5.56 30 round magazine;

         xi.   28 .38 special rounds.

         xii.   twenty-eight .40 caliber rounds;

         xiii.   fifty .223 caliber rounds;

         xiv.   one hundred and eighty-four .9mm rounds; and

         xv.   four .45 caliber rounds.

      e.   A stack of bank statements containing HUSSAIN's name, located directly next to the closet in the bedroom where the firearms and suspected cocaine were recovered.

      f.   $2,305 in U.S. currency, located in the kitchen drawer.

      g.   $238 in U.S. currency located in the master bedroom.

h.    $500 in U.S. currency located on HUSSAIN's person.

i.    A vacuum sealer and hundreds of vacuum seal bags located throughout the house.

j.    A gold-plated money counter located in the living room.  I know based on my training and experience that individuals involved in narcotics trafficking often use money counters to help count the proceeds of their drug sales.

k.    A shipping label printer was located in the living room.  This was significant, because all of the packages that were seized in the postal portion of this investigation had shipping labels that appeared to have not been printed by a post office or shipping center.

l.    Multiple cellphones were located throughout the Condominium, including two on HUSSAIN's person.  Based on my training and experience, I know that individuals involved in narcotics sales will often use multiple cellphones to help conduct their drug trafficking business.

//
//

9

## V.  CONCLUSION

28.  For all the reasons described above, there is probable cause to believe that HUSSAIN has committed a violation of 21 U.S.C section 841(a)(1) (possession with intent to distribute a controlled substance).

_____
/s/

Tanya J. Tran
HSI Special Agent

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 24th day of July,
2025.

_____
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE

10